"Marta Pisani", Petitioner, *v.* "Guissepi Pisani", Respondent.[*]

Domestic Relations Court of the City of New York, Family Court, Bronx County, July 8, 1948.

*Joseph J. Cella* for petitioner.

*Minerva Salzman* for respondent.

Sicher, J.  On February 17, 1948, Justice Bolin indorsed on the petition: " Temporary order, with respondent's consent and without prejudice to respondent's rights, of $10, payable Feb.

---

[*] The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act (L. 1933, ch. 482).

21, 1948. This is to prevent any application by petitioner for public assistance pending adjournment.''

On March 19, 1948, Justice BOLIN further indorsed on the petition: '' Both present, with counsel. Petitioner entitled to support on means basis. Adjourned to Apr. 9, 1948. Subpoena *duces tecum* against J. M. to produce books and records pertaining to respondent's employment for past year * * *.

'' Physical examination of both parties.

'' Temporary order modified to $17 a week, beginning Mar. 20, 1948.''

Such finding that '' Petitioner is entitled to support on means basis '', i.e., under subdivision (1) of section 92 of the New York City Domestic Relations Court Act, was made under subdivision (d) of Family Court Rule XIII (Bender's Court Rules [1st ed.], p. 368) which provides, in part: '' The Justice at the original support order hearing should, wherever practicable, adjudicate, and indicate by appropriate endorsement on the back of the petition, whether a petitioner-wife is entitled to support ' according to the circumstances of the respective parties ' or only on a ' public charge basis ', and whether the support order will be based on separate maintenance or whether respondent will remain in the home. * * * Such Justice should also, wherever practicable, enter a final support order. However, since the amount of support is an element separable from the other cause of action elements described in the first paragraph of this subd. d, it may be fixed by a succeeding Justice, in the absence of a previously entered final order.''

Such finding constitutes the '' law of the case '' in this proceeding and is binding both on the parties and upon me as the succeeding Justice charged with the sole duty of determining the amount of the final order, although such finding would not be *res judicata* in any subsequent matrimonial litigation in the Supreme Court of the State of New York. (*Loomis* v. *Loomis,* 288 N. Y. 222.)

However, '' The word ' circumstances ', used in statute relating to alimony, includes everything having legitimate bearing on present and prospective matters affecting the lives of both parties ''; and '' In passing upon the question of alimony, and the amount, if any, to be awarded, the court must consider all the pertinent circumstances involving each of the parties.'' (27 C. J. S., Divorce, § 233, and cases cited.) '' The ' circumstances of the parties ', as used in these statutory provisions with reference to the original decree, is quite comprehensive, and related not only to the pecuniary circumstances and the

requirements of the parties in view of the manner in which they had lived, but also authorized and required a consideration of the conduct of each; and if the wife was to some extent responsible for the misconduct of the husband, or in fault, although this did not justify his acts, yet it might be considered in determining the amount of alimony that she should receive." (*Goodsell* v. *Goodsell,* 82 App. Div. 65, 69.)

On the whole sordid record developed at two extended and stormy hearings before me the conclusion is inescapable that petitioner resorted to this court not so much for needed support as to vent her jealous and hurt feelings against respondent when his pending appeal to the Board of Immigration Appeals had, temporarily at least, blocked her design to cause respondent's deportation to Italy. "Hell hath no fury like a woman scorned."

No useful purpose would be served by a detailed narrative. Suffice it to state that *all* the evidence, including demeanor, has been considered in arriving at today's decision, and to recite only a few salient facts.

The parties intermarried on July 19, 1945, about a year after respondent had illegally entered this country as a deserter from the crew of an Italian ship and while he was living and working under an assumed name to avoid detection. The marriage license application states the bride's age as thirty-four and the groom's as twenty-eight; actually, she was then forty-one years old and he only twenty-four. It was her third marriage; by her first husband she had a son only three years younger than respondent, and according to the April 12, 1948, X Hospital report, her menstrual periods had stopped already in 1941. Petitioner is a professional actress of such demonstrated skill and experience that her melodramatic outbursts on the May 13, 1948, hearing almost deceived this court into commiting her for observation, under subdivision (19) of section 92 of the Domestic Relations Court Act. Respondent may perhaps have been attracted to her despite the difference in years; in any event, his marriage to an American citizen was artfully designed to effect his admission into this country. And, in fact she had originally petitioned for such entry, but after a quarrel in September, 1947, she withdrew her petition and caused the Federal Bureau of Investigation to arrest him and on her complaint his deportation to Italy has been recommended. To quote from his counsel's May 14, 1948, letter brief: " Having withdrawn her sponsorship as the American wife, the recommendation had to be deportation back to Italy. The matter is now on

appeal to the Board of Immigration Appeals in Washington, and in view of the fact that he has no assets or equities in this country and does not have the required period of residence or quota number, there is little likelihood that the recommendation will be reversed ''.

Another factor tending to keep down the amount of the final order is that, according to petitioner's testimony, respondent contributed little or no support after the first few weeks of the marriage but was permitted by petitioner to quit pie making to become a waiter and was indulgently maintained by her.

On the other hand, respondent is manifestly self-centered, tricky, and unstable; the money he accumulated from earnings while being maintained by petitioner he squandered on a trip to Florida, and admittedly he resorted to gambling instead of steady work as a means of sustenance after the separation from petitioner.

As soon as petitioner will have attained her main objective of causing respondent's deportation, this proceeding will be marked '' Reserved Generally ''.  Meanwhile, the fair and reasonable sum which respondent may be required to contribute is the original temporary order sum of $10 a week, beginning as of the April 9, 1948, hearing.

For the foregoing reasons the court finds that respondent is chargeable with support as alleged in the petition; and is hereby ordered and directed to pay into this court the sum of $10 weekly, each and every week, beginning on July 14, 1948, until further order of the court; and, *in addition,* to deposit by noon of July 28, 1948, the sum of $79 as the residue of the temporary order sums, at the readjusted, retroactive figure of $10 a week, accruing between April 9, 1948, and July 5, 1948 (both inclusive), after crediting respondent with interim deposits of $51.

When and if petitioner would otherwise become dependent to any extent upon home relief before respondent's deportation, the $10 a week order may be increased, by the Justice then sitting, to the extent necessary to exonerate the department of welfare of the city of New York from any burden of support of petitioner wife.

Notice shall be given to the parties pursuant to the subjoined direction.